## DAVIS, Plaintiff-Appellee, v. HORA, et al., Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19567.   Decided March 27, 1944.

Charles L. Livingstone, Cleveland, for plaintiff-appellee.
Richard DeNobel, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

The plaintiff brought this action in the Municipal Court of Cleveland, seeking to recover a real estate commission. He claimed said commission was due him from the defendants for procuring a purchaser for defendant's property who was ready, willing and able to buy said property on the terms upon which it had been listed with him. The defendants alleged, by way of answer, that if the property was listed with plaintiff it was without consideration and that before anything was done by the plaintiff the said listing was, for good cause, revoked and avoided.

The record discloses that the defendants were the owners jointly of a property located at 3401 Archmore Ave. The plaintiff, a licensed real estate broker, learned through a mutual friend that the defendants were contemplating the sale of their property. He therefore called to see defendants at about 6 P. M. on June 16, 1943. The defendant, Leona Hora, was at home at the time of plaintiff's call. Mrs. Hora asked him

what he thought the property would bring. The defendant, Mrs. Hora, testified that he said $5500.00 and that she then told him that they would not consider such a price. The property was listed with the plaintiff, the selling price being $6100.00. The defendant, Mrs. Hora, upon listing the property with the plaintiff, gave him the "exclusive sales rights * * * for a period of sixty days from date." There was no consideration paid to defendants for such "exclusive agency."

It is the contention of the defendants that within an hour after Mrs. Hora gave the exclusive listing to the plaintiff, she revoked the agency, telling the plaintiff that she had two cash offers, one for $6300.00 and the other for $6500.00.

The plaintiff, either the next day or two days following the listing day, brought an offer of $5900.00 to the defendants. This offer was refused and Mrs. Hora again claims to have told the plaintiff that she did not want him to do anything more about selling the property because she had a much better offer. The plaintiff then raised the offer of his prospective buyer to $6000.00 and then to $6100.00 within a period of a day or two, said offer being accompanied with a check for $100.00 as a down payment. These offers were in turn refused by the defendants. It is significant that the purchaser secured by plaintiff was at all times ready and did offer $6100.00 for the property, but the plaintiff, although acting as defendants' agent, tried to induce them to accept a lower figure. In this the plaintiff failed to perform his full duty to his principal. The defendants subsequently, to-wit, on July 13, 1943, sold the property for the sum of $6800.00.

There seems to be no question but that the prospective purchaser secured by plaintiff was, at the time he offered to purchase the property, ready, able and willing to carry out his offer upon the terms upon which the property was listed with the plaintiff.

There is presented for our consideration two questions: (1), the legal right of the defendants to cancel the exclusive listing given to plaintiff, at any time prior to his having procured a purchaser who was ready, able and willing to purchase the property upon the terms and conditions at which the property was listed with the plaintiff. (2), if the defendants were within their legal rights in cancelling such exclusive listing, whether the judgment of the trial court for the plaintiff upon the record was manifestly against the weight of the evidence.

It must be remembered that plaintiff did not purchase the exclusive right to sell the defendants' property. There was no consideration flowing to defendants. The plaintiff was not, by the agreement, bound to do anything. He could abstain from any activities in the interest of selling the property without

incurring the slightest legal liability to the defendants. The offer to contract was unilateral in its legal effect. There is no reason therefore why the defendants should not be able to avoid the granting of such exclusive agency to plaintiff at any time before the plaintiff had procured a purchaser upon the terms agreed to by the defendants.

The Supreme Court of Ohio in the case of **Brenner v Spregel, 116 Oh St 631,** in the course of the opinion, beginning on page 636, sets forth the rule generally to be applied in transactions between a vendor of real estate and a broker to whom the right to sell the property has been given. Referring to the petition under consideration in that case the court says:

"It describes the ordinary transaction with a real estate broker, consisting of a naked authority to sell, which constitutes an offer upon one side and the acceptance of the offer upon the other side by the doing of the act. Such a transaction is generally held to constitute a unilateral contract. The offer imposes no obligation upon the vendor before the acceptance thereof. * * * * As a mere naked authority to sell land does not constitute a contract, it is revocable at any time before the offer which is contained in the authority is accepted."

The court then sets forth several leading authorities in support of the rule, as follows:

" 'So an authority to sell land or other property when not coupled with an interest may be revoked at any time before the actual sale takes place * * * * *.' "

1 American & English Enc. Law, 1216.

" 'A unilateral agreement of a land owner constituting an exclusive agent for the sale of the land within a specified time, which agent is to receive a commission, regardless of who effects the sale and is to be aided by the owner in making the sale, lacks mutuality and hence is revocable at any time before the agent procures a purchaser.' "

Kolb v Burnett Land Co. 74 Mass. 567, 21 So. 233.

" 'A contract without consideration by a landowner merely giving one the exclusive agency for a year to sell the land on a commission, may be revoked prior to a sale, being without mutuality.' "

The court on page 639 of the opinion, states the rule as follows:

"* * * * * * However, whether the authority to sell is exclusive or not exclusive, the principle remains the same, that the contract is unilateral; that the acceptance is the doing of the act contemplated (in this case the securing of the purchaser) and that there is no mutuality, no consideration and no binding obligation and hence no contract prior to that acceptance."

We conclude, therefore, that upon the admitted facts in this case, the plaintiff's authority to find a purchaser for defendants' property, given as it was without consideration, was revocable at the instance of defendants and if defendants did, in fact, revoke such agency before plaintiff produced a buyer willing and able to buy upon the terms set forth in the listing, any subsequent attempt to produce a purchaser under such listing would be of no avail.

We come now to the question as to whether or not the judgment is manifestly against the weight of the evidence.

The defendants testimony is clear, unambiguous and convincing on the question of the revocation of the agency. Mrs. Hora testified that within an hour after she signed the listing card of plaintiff, in a telephone conversation with plaintiff she told him of two offers she had just received for the property, one for $6300.00 cash and the other for $6500.00 cash and that she then told plaintiff "not to go any further," in finding a purchaser for the property. And on two other occasions defendants testified about circumstances from which the only logical conclusion to be drawn was that the listing had been withdrawn. When the plaintiff was asked, "didn't you call Mrs. Hora back that same night" that is on the evening of the afternoon that he first met Mrs. Hora, he answered, "I may have." Later, in his testimony he denied having such a conversation. His last statement was "not to my recollection." Plaintiff testified positively that he brought two propositions to Mrs. Hora from Kalna. The first was for $5900.00, the second was for $6100.00, the listing price. In a day or two after the property was listed with him, plaintiff testified that he brought Mrs. Hora an offer of $5900.00. Then after "some time had elapsed" he submitted the offer of $6100.00. As to the time that intervened between making the offer of $5900.00 and later $6100.00, plaintiff testified "I don't know whether one day, two days or three days elapsed."

The plaintiff admitted that in one of his conversations with Mrs. Hora she told plaintiff that she had one offer of

$6500.00 and another offer of $6300.00 for the property. Mrs. Hora said, according to plaintiff, that the offer "came from a gentleman friend of her daughter."

The plaintiff was asked whether or not Mrs. Hora told him about the two offers, one of $6500.00 and the other of $63-00.00 when plaintiff brought the offer of $5900.00 for the property. Plaintiff's answer was "I am not positive if it was when I submitted the $5900.00 offer or the $6100.00."

There is no doubt whatsoever that when Mrs. Hora told plaintiff about the two higher offers received for the property she told him not to bother any more about selling the property for $6100.00. According to plaintiff's own testimony, this conversation may have taken place when he submitted the $5900.00 offer, which was from one to three days before he submitted the $6100.00 offer. The plaintiff therefore did not deny the positive testimony of Mrs. Hora that she withdrew the listing of the property with plaintiff before he brought the Kalna offer of $6100.00.

It therefore is clear to us that the judgment of the Municipal Court in this case is manifestly against the weight of the evidence. The judgment is reversed and the cause remanded for further proceedings according to law.

MORGAN, P. J., and LIEGHLEY, J., concur.